ACCEPTED
04-15-00255-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/10/2015 4:39:08 PM
KEITH HOTTLE
CLERK

# No. 04-15-00255-CV

## In the Fourth Court of Appeals

## San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
08/10/2015 4:39:08 PM
KEITH E. HOTTLE
Clerk

**SW Loan A, L.P.**,

*Appellant*,

v.

**Anibal J. Duarte-Viera**, **Antonio P. Pardo**, and
**Edward M. Reiss**,

*Appellees*.

## BRIEF OF APPELLANT

From the 131st District Court, Bexar County, Texas, No. 2012-CI-12742
The Honorable John D. Gabriel Presiding

**Counsel for Appellant:**

John T. Gerhart, Jr.
jgerhart@hunton.com
State Bar No. 00784122

Bryan C. Bond
bbond@hunton.com
State Bar No. 24082701

Hunton & Williams LLP
1445 Ross Ave., Ste. 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**

SW Loan A, L.P.

| **Appellate Counsel:** | **Trial Counsel:** |
|---|---|
| John T. Gerhart, Jr. | Jo E. Hartwick |
| jgerhart@hunton.com | hartwick@sbep-law.com |
| State Bar No. 00784122 | State Bar No. 09175045 |
| Bryan C. Bond | David A. Klingler |
| bbond@hunton.com | klingler@sbep-law.com |
| State Bar No. 24082701 | State Bar No. 11574300 |
| | |
| HUNTON & WILLIAMS LLP | STUTZMAN, BROMBERG, |
| 1445 Ross Ave., Ste. 3700 | ESSERMAN & PLIFKA, P.C. |
| Dallas, Texas 75202-2799 | 2323 Bryan Street, Suite 2200 |
| Telephone: (214) 979-3000 | Dallas, Texas 75201 |
| Facsimile: (214) 880-0011 | Telephone: (214) 969-4900 |
| | Facsimile: (214) 969-4999 |
| | |
| | –and– |
| | |
| | Martin Thomas Hougham |
| | martin-t-hougham@houghamlaw.com |
| | State Bar No. 10034300 |
| | |
| | 3700 Fredericksburg Rd., Suite 237 |
| | San Antonio, Texas 78201-7570 |
| | Telephone: (210) 375-7570 |
| | Facsimile: (210) 375-7569 |

**Appellees:**

Anibal J. Duarte-Viera,
Antonio P. Pardo, and
Edward M. Reiss

**Appellate and Trial Counsel**:

Robert A. McNiel
rmcniel@deanslyons.com
State Bar No. 24043814
Kathleen Kilanowski
kkilanowski@deanslyons.com
State Bar No. 24053303

Deans & Lyons, LLP
325 N. Saint Paul Street, Suite 1500
Dallas, Texas 75201-3891
Telephone: (214) 965-8500
Facsimile: (214) 965-8505

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................. i

TABLE OF CONTENTS ................................................................. iii

INDEX OF AUTHORITIES .............................................................. v

EXPLANATION OF REFERENCES ..................................................... viii

STATEMENT OF THE CASE ............................................................ ix

ISSUES PRESENTED ................................................................... x

STATEMENT OF FACTS ................................................................ 4

A.    The Borrower and Guarantors executed a series of documents in connection with the Loan. .............................................................. 4

   1.    The Loan Agreement ......................................................... 5

   2.    The Promissory Note ........................................................ 9

   3.    The Deed of Trust ........................................................... 13

   4.    The Guaranty Agreements ................................................... 14

B.    The Lender assigned to SW Loan all rights under the Loan Agreement, the Promissory Note, the Deed of Trust, and the Guaranty Agreements. ...... 16

C.    The Borrower defaulted on the loan, SW Loan began foreclosure proceedings, and the Borrower filed bankruptcy. ........................................ 20

D.    The Borrower's sworn bankruptcy statements acknowledged both that SW Loan's claim was undisputed and that the Guarantors were co-debtors...23

E.    SW Loan foreclosed on the property and established a deficiency. ........ 24

F.    SW Loan sued the Guarantors to recover the unpaid balance on the Loan, and the Guarantors counterclaimed for a declaratory judgment seeking

to validate their affirmative defenses.................................................26

G.    The Guarantors offered no evidence of the Borrower's compliance with the Promissory Note.................................................... 28

H.    The jury found that the Borrower did not fail to comply with the Promissory Note and therefore skipped the remaining questions dealing with the Guarantors' liability to SW Loan. ............................................ 31

SUMMARY OF THE ARGUMENT.......................................................35

ARGUMENT ........................................................................................36

A.    The evidence is legally and factually insufficient to support the jury's answer to Question No. 2. ....................................................................36

    1.    Standard and Scope of Review..........................................................36

    2.    SW Loan conclusively established every element of a claim for breach of the Promissory Note. ....................................................................38

    3.    The Borrower's default under the Promissory Note was conclusively established according to the unambiguous terms of the governing Loan Agreement. ....................................................................................46

    4.    Unrebutted *prima facie* evidence established the Borrower's default. .49

    5.    Neither the fact that Bexar County allows a split-payment option nor Mr. Redman's credibility alters the inescapable conclusion that the Borrower defaulted on the Promissory Note. .............................................52

B.    The trial court abused its discretion in awarding attorney fees to the Guarantors. ....................................................................................58

CONCLUSION AND PRAYER............................................................. 60

CERTIFICATE OF COMPLIANCE.......................................................62

# INDEX OF AUTHORITIES

**Cases**

*Bexar Cnty. Appraisal Review Bd. v. First Baptist Church*, 846 S.W.2d 554 (Tex. App.—San Antonio 1993, writ denied) .................................................... 58, 59

*BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838 (Tex. 1990) ................... 58, 59

*Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287 (Tex. App.—Fort Worth 2007, pet. withdrawn) ................................................................. 39

*Burlington N. R.R. Co. v. Gen. Projection Sys., Inc.*, No. 05-97-00425-CV, 2000 WL 1100874 (Tex. App.—Dallas Aug. 8, 2000, pet. denied) (not designated for publication) ...................................................................................... 56

*Burns v. Resolution Trust Corp.*, 880 S.W.2d 149 (Tex. App.—Houston [14th Dist.] 1994, no writ) .............................................................................. 39

*Choice Pers. No. Four, Inc. v. 1715 Johanna Square Ltd.*, No. 01-05-00830-CV, 2007 WL 1153046 (Tex. App.—Houston [1st Dist.] Apr. 13, 2007, pet. denied) (mem. op.) .................................................................................. passim

*Choice Pers. No. Four, Inc. v. Richardson*, No. 14-05-00675-CV, 2006 WL 2074681 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (mem. op.)........... passim

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005) ................................... 36, 57

*City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699 (Tex. App.—Fort Worth 2008, pet. dism'd) ................................................................54

*Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671 (Tex. 2006) ....................39

*DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160 (Tex. App.—Fort Worth 2012, no pet.)........................................................................39

*Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264 (Tex. App.— Houston 1991, no writ) .................................................... 41, 43, 49

*Doncaster v. Hernaiz*, 161 S.W.3d 594 (Tex. App.—San Antonio 2005, no pet.) .38

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex. 2001)..............................36, 37, 38

*Durham Transp. Co., Inc., v. Beettner*, 201 S.W.3d 859 (Tex. App.—Waco 2006, pet. denied) ......................................................................................59

*Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458 (Tex. 1969) ...........39

*Heritage Life v. Heritage Group Holding*, 751 S.W.2d 229 (Tex. App.—Dallas 1998, writ denied)................................................................................58

*Hudspeth v. Investor Collection Servs. Ltd. P'ship*, 985 S.W.2d 477 (Tex. App.—San Antonio 1998, no pet.) ........................................................... 38, 44

*Ingham v. O'Block*, 351 S.W.3d 96 (Tex. App.—San Antonio 2011, pet. denied)36, 37, 38

*Johnson v. Structured Asset Servs.*, LLC, 148 S.W.3d 711 (Tex. App.—Dallas 2004, no pet.) ...................................................................................................... 39

*Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981) ........................................................ 46

*Kirkman v. Amarillo Sav. Ass'n*, 483 S.W.2d 302 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.) ............................................................................... 41, 43, 49

*Mem'l Med. Ctr. of East Texas v. Keszler*, 943 S.W.2d 433 (Tex. 1997) ................ 46

*MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51 (Tex. App.—San Antonio 2005, pet. denied) ........................................................ 46

*Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986) ........................................ 37

**Rules**

Tex. R. App. P. ............................................................................................... 34

Tex. R. Civ. P. 93 ............................................................................................ 26

**Other Authorities**

Tex. Pattern Jury Charge § 101.2 ................................................................ 31, 32

## EXPLANATION OF REFERENCES

*Clerk's Record*:            CR.[page[1]]

*Reporter's Record*:         [Volume].RR.[page][:line (if applicable)]

*Appendix*:                  App. [tab]

---

[1] Citations to page numbers are to the page numbers within the .pdf copies of the clerk's and reporter's records on file with the Court.

## STATEMENT OF THE CASE

*Nature of the Case*:       Breach-of-guaranty dispute

*Trial Court*:              131st District Court,
                            Bexar County, Texas,
                            Honorable John D. Gabriel presiding

*Trial Court Disposition*:  Final judgment on the jury's verdict providing that
                            Appellant SW Loan A, L.P. take nothing on its claims
                            and awarding attorney fees to Appellees Duarte-
                            Viera, Pardo, and Reiss.[2]

---

[2] CR.775–77 (App. A.).

## ISSUES PRESENTED

1.  Uncontroverted evidence conclusively established that a borrower filed for bankruptcy and that it failed to repay its loan. Bankruptcy and non-payment unambiguously qualified as defaults under the governing loan documents—including the borrower's promissory note. Moreover, the Appellant introduced unrebutted *prima facie* evidence of the borrower's default. Could the jury ignore conclusive evidence of default and find instead that the borrower complied with the promissory note?

2.  The trial court's attorney-fee award was based solely on the Appellees' counterclaim for a declaratory judgment. Texas law does not allow a defendant to file a counterclaim seeking a declaratory judgment on issues that are already pending in the underlying suit. The Appellees' counterclaim sought only to resolve the Appellees' defenses to the Appellant's claims. Therefore, it was barred as a matter of law. Were the Appellees entitled to recover attorney fees for their counterclaim?

# No. 04-15-00255-CV

**SW LOAN A, L.P.**,

*Appellant*,

v.

**ANIBAL J. DUARTE-VIERA**, **ANTONIO P. PARDO**, and
**EDWARD M. REISS**,

*Appellees*.

## BRIEF OF APPELLANT

TO THE HONORABLE COURT OF APPEALS:

This case involves a loan that has not been repaid by either the bankrupt entity that took out the loan or the guarantors who individually guaranteed the loan's repayment. 1946 Property, LLC (the "Borrower") borrowed $10,000,000.00 (the "Loan") from Stillwater National Bank and Trust Company (the "Lender.") Appellees Duarte-Viera, Pardo, and Reiss (the "Guarantors") personally guaranteed the Loan's repayment.

Appellant SW Loan A, L.P. ("SW Loan") acquired the Loan and was assigned all rights under the governing loan documents. Those documents unambiguously stated that if the Borrower failed to pay an amount due under the Loan or if it filed bankruptcy, it would be in default under *each* of the governing loan documents—including the promissory note executed in connection with the Loan (the "Promissory Note").

In proving its case against the Guarantors, SW Loan introduced uncontroverted evidence establishing every element of a claim against the Borrower for breaching the Promissory Note. It also introduced uncontroverted evidence establishing that the Borrower both failed to repay the Loan and filed for bankruptcy. Either was sufficient to conclusively establish a default under each of the loan documents—including the Promissory Note. Further, the Plaintiff introduced unrebutted *prima facie* evidence that the Borrower defaulted on its obligation to repay the indebtedness evidenced by the Promissory Note. That too was sufficient to conclusively establish the Borrower's noncompliance with the Promissory Note.

Yet, in response to Question No. 2, the jury found that the Borrower did not fail to comply with the Promissory Note. Because a default under the Promissory Note was conclusively established and the evidence was both legally and factually insufficient to support the jury's response to that question, the trial court's take-nothing judgment based on the jury's verdict must be set aside.

The trial court's judgment must also be reversed and rendered with respect to the attorney fees awarded to the Guarantors. That award was based solely on the Guarantors' counterclaim brought under the Uniform Declaratory Judgments Act ("UDJA"). But that counterclaim was barred as a matter of law because it sought only to resolve the Guarantors' affirmative defenses to SW Loan's underlying claims. Because there was no legal basis to support the Guarantors' counterclaim under the UDJA, there can be no legal basis for awarding their attorney fees.

## STATEMENT OF FACTS

### A.  The Borrower and Guarantors executed a series of documents in connection with the Loan.

The Lender loaned $10,000,000.00 to the Borrower on April 17, 2008.[3] In connection with that Loan, the Borrower and the Guarantors executed a series of documents.[4] Those documents included: (1) a loan agreement (the "Loan Agreement") setting forth the terms and conditions of the transaction[5]; (2) a Promissory Note evidencing the Borrower's indebtedness under the Loan[6]; (3) a Deed of Trust, Assignment of Rents and Security Agreement (the "Deed of Trust") providing security for the Loan[7]; and (4) three limited guaranty agree-

---

[3] 2.RR.79:22–80:3; 2.RR.100:24–101:1; *see also* 5.RR.272 (Recitals in Substitute Trustee's Deed and Bill of Sale stating that the Lender made a $10,000,000.00 loan to the Borrower evidenced by the Promissory Note).

[4] *See* 5.RR.8 (listing various loan documents assigned to SW Loan).

[5] *See* 5.RR.10–31 (Loan Agreement); 2.RR.104:16–17 (admitting the Loan Agreement into evidence); 3.RR.6:18–7:14 (testimony from Appellant Pardo authenticating the Loan Agreement).

[6] 5.RR.39–41 (Promissory Note) (not offered or admitted into evidence); *see* 2.RR.106:16–22 (testimony from the loan servicer's representative stating that the Promissory Note in the amount of $10,000,000.00 was executed by the Borrower on April 17, 2008); 3.RR.9:2–12 (testimony from Appellee Pardo authenticating the Promissory Note and acknowledging that he and Appellee Duarte-Viera signed it on behalf of the Borrower); 5.RR.272 (Recitals in Substitute Trustee's Deed and Bill of Sale stating that the Borrower had made the Promissory Note on April 17, 2008 and that it evidenced the Borrower's $10,000,000.00 indebtedness).

[7] 5.RR.58–89 (Deed of Trust); *see* 2.RR.116:5-12 (admitting the Deed of Trust into evidence); 5.RR.272 (Recitals in Substitute Trustee's Deed and Bill of Sale stating that the indebtedness evidenced by the Promissory Note was secured by the Deed of Trust executed by

ments executed by each of the Guarantors (collectively, the "Guaranty Agreements") guaranteeing the Borrower's compliance with its monetary obligations under the Loan.[8]

### 1. The Loan Agreement

The Loan Agreement, which was admitted into evidence,[9] set forth the general terms and conditions of the Loan.[10] One of those conditions was that the Borrower and Guarantors would execute and deliver the Promissory Note, the Deed of Trust, and the Limited Guaranty Agreements.[11] And each of those documents was included in the Loan Agreement's definition of the term "Loan

---

the Borrower on April 17, 2008).

[8] 5.RR.43–46 (Appellee Duarte-Viera's Limited Guaranty Agreement); 5.RR.48–51 (Appellee Pardo's Limited Guaranty Agreement); 5.RR.53–56 (Appellee Reiss's Limited Guaranty Agreement).

[9] 2.RR.104:16–17; *see also* 3.RR.6:18–7:14 (presenting testimony from Appellant Pardo authenticating the Loan Agreement).

[10] *See* 5.RR.10 ("Subject to the terms and conditions hereinafter set forth, Lender agrees to lend to Borrower, and the Borrower agrees to borrow from the Lender….").

[11] *See* 5.RR.12–13 § 6 1 1 ("This Loan Agreement, the [Promissory] Note, the Deed of Trust, …, the Limited Guaranty Agreements, … and all other documents executed pursuant thereto or in connection therewith as might be required by the Lender (all of the foregoing are referred to herein as the 'Loan Documents') shall have been duly authorized, executed and delivered to Lender.").

Documents."[12] Moreover, all of those documents were considered part of the "entire agreement" between the parties.[13]

The term "Loan Documents" was also used in the Loan Agreement to outline the conditions under which the Borrower would be in default of *each* of the documents executed in connection with the Loan (including the Promissory Note):

> **DEFAULT** Each of the following shall constitute a Default here-under *and under each of the Loan Documents* ("Default").[14]

Among the conditions of default unambiguously set forth in the Loan Agreement were bankruptcy, nonpayment of the Promissory Note, nonpayment of any other amount payable under the Loan Documents, and the breach of any covenant made in the Loan Documents:

> 9 1 <u>Nonpayment of Note</u>  Failure to make payment of any interest on or principal of the Note or any renewals or modifications thereof within five (5) days after the due date thereof, or

---

[12] *Id.* References in this Brief to the term Loan Documents will have the same meaning as in the Loan Agreement unless otherwise specified.

[13] 5.RR.28 ("This Loan Agreement, all of the Loan Documents and the other loan documents executed pursuant hereto or in connection herewith constitute the entire agreement between the parties….").

[14] 5.RR.23 (emphasis added).

9 2     Other Nonpayment    Failure to make payment of any other amount payable under the terms of this Loan Agreement or any of the Loan Documents within five (5) days after the due date thereof, or

9 3     Breach of Covenants   Breach by Borrower in the performance or observance of any covenant made under this Agreement or any of the Loan Documents, or under the terms of any other instrument delivered to Lender in connection with this Loan Agreement, provided that with respect to any such covenants which are non-monetary in nature, the Borrower will have thirty (30) days to cure the breach of such covenant after the occurrence thereof before such occurrence will constitute a default hereunder, or

***

9 9     Bankruptcy   The institution of bankruptcy, reorganization, liquidation or receivership proceedings by or against the Borrower or any of the Guarantors, or the making of any assignment for the benefit of creditors by or against the Borrower or any of the Guarantors, or if the Borrower or any of the Guarantors becomes insolvent, or any admission by the Borrower or any of the Guarantors of its or their inability to pay its or their debts as such debts mature, or ….[15]

In addition, one of the Loan Agreement's covenants required the Borrower to promptly pay all taxes owed:

7 7     Payment of Taxes   All taxes, assessments and governmental charges or levies imposed on the Borrower or on Borrower's

---

[15] 5.RR.23–25.

assets, income or profits will be paid prior to the date on which penalties attach thereto.[16]

The Loan Agreement was amended by the Borrower and the Lender on May 12, 2011 (the "Amendment") to facilitate an additional $240,000.00 loan to help the Borrower pay its *overdue taxes* from 2010.[17] As part of that Amendment, the Borrower agreed to make monthly tax escrow payments of $20,000.00 commencing June 5, 2011.[18] The remaining terms of the Amendment are of little significance to this appeal, but it should be noted that: (1) each of the Guarantors consented to the amendment and acknowledged it would not alter their obligations under the Limited Guaranty Agreements[19]; (2) the Promissory Note, the Deed of Trust, and the Limited Guaranty Agreements remained within the

---

[16] 5.RR.20–21; *see also id.* at § 7 1 ("The Borrower will promptly and punctually perform all of the obligations hereunder and under the Loan Documents, and under all other instruments executed or delivered pursuant thereto ....").

[17] 5.RR.33–35 (the Amendment); 2.RR.105:17–18 (admitting the Amendment into evidence); 3.RR.7:19–8:8 (authenticating the Amendment); 5.RR.305–07 ("Once we have received consents from all of you these changes will be made and SNB will be in a position to close and fund this loan to pay the overdue taxes."); 3.RR.44–45 (admitting email chain demonstrating purpose of additional loan into evidence).

[18] *Id.*

[19] 5.RR.34 ("The Guarantors hereby jointly and severally consent to the modifications made to the Loan Agreement and the Loan Documents by the terms of this First Amendment, the Security Agreement and the Assignment of Management Agreement[.] The Guarantors hereby jointly and severally agree that such modifications do not affect the guaranty obligations of the Guarantors under the Limited Guaranty Agreements, all of which remain in full force and effect.").

Loan Agreement's definition of the term Loan Documents[20] following the Amendment; and (3) the Loan Agreement's other terms—to the extent they are material to this appeal—remained unchanged and in full effect.[21]

### 2. The Promissory Note

Although the Promissory Note itself was neither offered nor admitted into evidence,[22] evidence of its existence and the fact that it was signed by the Borrower was presented at trial.[23] For example, Appellee Pardo identified the Promissory Note during his testimony and admitted that both he and Appellee Duarte-Viera signed the $10,000,000.00 note on behalf of the Borrower:

> Q   Mr. Pardo, I'm going to hand you what's been designated as Plaintiff's Exhibit 5, and would you please read that -- the title of that document?
>
> A   This is a Promissory Note.

---

[20] 5.RR.33–34 ("This Loan Agreement, the [Promissory] Note, the Deed of Trust, … , the Limited Guaranty Agreements, … and all other documents executed pursuant thereto or in connection therewith as might be required by the Lender (all of the foregoing are collectively referred to herein as the 'Loan Documents')….").

[21] 5.RR.34–35 ("Except to the extent amended by this First Amendment, …, the Loan Agreement and all of the Loan Documents, and the liens created thereby will all remain in full force and effect, unabated and uninterrupted.").

[22] *See* 4.RR.42:12–24 ("[T]he court reporter and myself [Judge Gabriel] have reviewed the exhibit list and [three exhibits (including the Promissory Note)] were referred to in the testimony but they were never offered or admitted in evidence.").

[23] *See, e.g.,* 3.RR.9:2–12(authenticating the Promissory Note); 5.RR.8, 10, 12–13, 20 (referencing the Promissory Note and its terms).

Q     In the amount -- how much is that promissory note, is the amount of the note please, sir?

A     Ten million.

Q     And if you turn to the end of that document, sir, who signed that note?

A     **I signed it as a borrower and manager of 1946 Property as well as my partner, Anibal J. Duarte-Viera.**[24]

Mr. Gary Redman, an asset manager and representative from SW Loan's loan servicer, Situs Asset Management, also identified the Promissory Note:

Q     Mr. Redman, I'm handing you what's been designated as Plaintiff's Exhibit 5. What is Plaintiff's Exhibit 5, Mr. Redman?

A     This is the promissory note, the $10 million promissory note that was executed by 1946 Property, LLC and promises to pay Stillwater National Bank and Trust. It was executed April 17, 2008.[25]

Many of the documents admitted into evidence at the trial also refer to the Promissory Note and evidence its existence.[26] For example, the Recitals to the Substitute Trustee's Deed and Bill of Sale (the "Deed Recitals")—issued in

---

[24] 3.RR.9:2–12 (emphasis added).

[25] 5.RR.106:16–22.

[26] *See, e.g.*, 5.RR.8, 10, 12–13, 20 (referencing the Promissory Note).

connection with SW Loan's foreclosure on the property pledged by the Borrower

as security for the indebtedness evidenced by the Promissory Note—state that

> Stillwater National Bank and Trust Company ("Original Lender") made a loan (the "Loan") to 1946 Property, LLC, a Texas limited liability company ("Borrower"), in the principal amount of $10,000,000.00, the indebtedness of which is evidenced by that certain Promissory Note made by Borrower and dated April 17, 2008 (the "Note").[27]

As discussed above, the Loan Agreement made executing the Promissory Note a

condition precedent to the Lender's obligation to make the Loan and provides

evidence of the Promissory Note's key terms:

> **<u>BORROWER'S NOTE</u>** The Loan Commitment shall be evidenced by a Promissory Note of even date herewith in the principal face amount of TEN MILLION DOLLARS ($10,000,000[.]00) (the "Note"), which Note shall be in form and substance and payable on the terms approved by Lender Interest on the Note will be payable at the fixed interest rate equal to six percent (6[.]00%) per annum (the "Interest Rate")[.] Monthly installments of principal and interest will be payable on the Note based on a three hundred sixty (360) month amortization at the Interest Rate in accordance with the terms of the Note[.] The entire unpaid principal balance plus all accrued interest owing on the Note shall be due and payable on the Maturity Date[.[28]] All interest hereon shall be calculated for the actual number of days elapsed at a per diem charge based on a year consisting of 360 days.[29]

---

[27] 5.RR.272.

[28] The "Maturity Date" as defined in the Loan Agreement was April 17, 2013. 5.RR.10.

[29] *Id.*

–11–

The Deed of Trust likewise refers to, incorporates, and provides evidence of the existence of the Promissory Note:

> Note A certain Promissory Note of even date herewith, incorporated herein by this reference, executed by Grantor and payable to the order of Beneficiary in the principal face amount of TEN MILLION AND 00/100 DOLLARS ($10,000,00[.]00)("Note"), bearing interest as therein specified, containing an attorneys' fee clause, interest and principal being payable as therein specified, and finally maturing five (5) years after the date hereof, which Note is secured by, among other things, this Deed of Trust, and any and all renewals, modifications, amendments, rearrangements, consolidations, reinstatements, enlargements, or extensions of such promissory Note or of any promissory note or Note given in renewal, substitution or replacement therefore, together with all interest thereon.[30]

Finally, each of the Guaranty Agreements refers to the Promissory Note and provides evidence of its existence:

> WHEREAS, pursuant to the terms of a certain Loan Agreement of even date herewith (the "Agreement"), the Lender has extended credit to 1946 PROPERTY, LLC, a Texas limited liability company (the "Borrower") in the principal amount of TEN MILLION DOLLARS ($10,000,000[.]00) as evidenced by a certain Promissory Note of even date herewith in the principal face amount of $10,000,000[.]00 (the "Note") ….[31]

---

[30] 5.RR.63.

[31] 5.RR.43, 48, 53.

–12–

### 3. The Deed of Trust

The Deed of Trust, which was admitted into evidence,[32] pledged the Borrower's property as security for both the Borrower's indebtedness under the Promissory Note and its obligations under the other "Loan Documents."[33] In addition to the references to the Promissory Note mentioned above, the Deed of Trust contains other terms that are material to this appeal. For example, the Borrower (Grantor) agreed that certain statements made in the Deed Recitals would be *prima facie* evidence of the truth of those statements:

> Trustee's Deeds    After any sale under this subsection, Trustee shall make good and sufficient deeds, assignments, and other conveyances to the purchaser or purchasers thereunder in the name of Grantor, conveying the Mortgaged Property or any part thereof so sold to the purchaser or purchasers with general warranty of title by Grantor[.] **It is agreed that in any deeds, assignments or other conveyances given by Trustee, any and all statements of fact or other recitals therein made as to the identity of Beneficiary,[34] the occurrence or existence of any Event of**

---

[32] 2.RR.116:5–12; *see also* 3.RR.10:7–16 (presenting testimony from Appellant Pardo authenticating the Deed of Trust).

[33] 5.RR.63 ("A certain Promissory Note of even date herewith, incorporated herein by this reference, executed by Grantor and payable to the order of Beneficiary in the principal face amount of TEN MILLION and 00/100 DOLLARS ($10,000,000[.]00) ("Note") … is secured by, among other things, this Deed of Trust."); 5.RR.65 ("To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations ….").

[34] The term "Beneficiary" was defined by the Deed of Trust to include the Lender "and the subsequent holder or holders, from time to time, of the [Promissory] Note." 5.RR.60.

**Default**, the notice of intention to accelerate, or acceleration of, the maturity of the Indebtedness, the request to sell, notice of sale, time, place, terms and manner of sale, and receipt, distribution, and application of the money realized therefrom, the due and proper appointment of a substitute Trustee, and without being limited by the foregoing, any other act or thing having been duly done by or on behalf of Beneficiary or by or on behalf of Trustee, **shall be taken by all courts of law and equity as *prima facie* evidence that such statements or recitals state true, correct, and complete facts and are without further question to be so accepted**, and Grantor does hereby ratify and confirm any and all acts that Trustee may lawfully do in the premises by virtue hereof.[35]

Further, the Borrower (Grantor) agreed that after foreclosure, SW Loan—as holder of the Promissory Note—would be entitled to seek a deficiency judgment:

> [T]he Beneficiary [SW Loan[36]] **shall be entitled to seek a deficiency judgment** *from Grantor [Borrower], the Guarantors [the Appellees], and any other party obligated on the [Promissory] Note* equal to the difference between the amount owing on the [Promissory] Note and the amount for which the Mortgaged Property was sold pursuant to a judicial or nonjudicial foreclosure sale.[37]

### 4.    The Guaranty Agreements

Each of the Guarantors signed a Limited Guaranty Agreement in which he ratified, agreed, and consented to the terms of the Loan Agreement, the Promis-

---

[35] 5.RR.68 (emphasis added).

[36] *See supra* note 34.

[37] 5.RR.74.

–14–

sory Note, and all of the other "Loan Documents."[38] And each of the Guaranty

Agreements was admitted into evidence.[39] Under the terms of those agreements,

each Guarantor

> guarantee[d] to the Lender the absolute, complete and punctual payment and performance when due of all principal indebtedness and other monetary obligations evidenced by or owing under the [Promissory] Note, the [Loan] Agreement, the Loan Documents,[40] and all other documents executed in connection therewith and all renewals, consolidations, modifications, amendments, increases and extensions thereof, together with all interest thereon and all expenses of collection therefor including attorneys' fees and expenses (all of the foregoing items are referred to herein as the "Indebtedness"), provided that the Guarantor's foregoing guarantee of payment and performance obligation owing hereunder is limited to $2,500,000[.]00 of principal plus all interest attributable thereto[.] Except as limited herein, this Limited Guaranty Agreement is an absolute, unconditional and continuing guaranty of payment of the entire amount of the Indebtedness[.] The obligations of the Guarantor hereunder will not terminate until

---

[38] 5.RR.43, 48, 53.

[39] 5.RR.43–46 (Appellee Duarte-Viera's Limited Guaranty Agreement); 2.RR.110–11 (admitting Appellee Duarte-Viera's Limited Guaranty Agreement into evidence); 3.RR.21:8–22:21 (presenting testimony from Appellee Duarte-Viera authenticating his Limited Guaranty Agreement); 5.RR.48–51 (Appellee Pardo's Limited Guaranty Agreement); 2.RR.112–13 (admitting Appellee Pardo's Limited Guaranty Agreement into evidence); 3.RR.9:16–10:3 (presenting testimony from Appellee Pardo authenticating his Limited Guaranty Agreement); 5.RR.53–56 (Appellee Reiss's Limited Guaranty Agreement); 2.RR.114 (admitting Appellee Reiss's Limited Guaranty Agreement into evidence); 3.RR.24:21–26:10 (presenting testimony from Appellee Reiss authenticating his Limited Guaranty Agreement).

[40] The term Loan Documents in in the Guaranty Agreements carries the same meaning as it does in the Loan Agreement. *See id.*

the entire amount of the Indebtedness has been paid to the Lender in full in current funds....[41]

Each of the Guarantors also agreed that "the Lender may, at the Lender's option, proceed to enforce this Limited Guaranty Agreement directly against the Guarantor *immediately after the occurrence of a Default under the [Loan] Agreement (which term "Default" will have the same meaning herein as such term is defined in the [Loan] Agreement).*"[42] Finally, each of the Guarantors consented to the assignment—without notice—of any of the Lender's rights under the Guaranty Agreements.[43]

## B. The Lender assigned to SW Loan all rights under the Loan Agreement, the Promissory Note, the Deed of Trust, and the Guaranty Agreements.

On or about December 13, 2011, the Lender transferred to SW Loan all "right, title and interest in and to," among other things, the Loan Agreement the Promissory Note, the Deed of Trust, and the Guaranty Agreements.[44] Mr. Redman identified the documents that were assigned to SW Loan (including the

---

[41] *Id.*

[42] 5.RR.45, 50, 55 (emphasis added).

[43] 5.RR.46, 51, 55 ("The Guarantor hereby consents to the assignment of all or any portion of the rights of the Lender hereunder in connection with the assignment of the Indebtedness or any portion thereof without notice to the Guarantor.").

[44] 5.RR.6–8 (Assignment and Bill of Sale); 2.RR.100:4–13 (admitting Assignment and Bill of Sale into evidence).

Promissory Note),[45] and he also testified that the Promissory Note contained an

allonge indicating its assignment to SW Loan:

> Q      Mr. Redman, I'm handing you what's been designated as Plaintiff's Exhibit 5. What is Plaintiff's Exhibit 5, Mr. Redman?
>
> A      This is the promissory note, the $10 million promissory note that was executed by 1946 Property, LLC and promises to pay Stillwater National Bank and Trust. It was executed April 17, 2008.
>
> Q      If you'll turn to the -- I think it's the last page of that -- it was the third page. I think that's the last page of the promissory note, Mr. Redman. What's the significance of the single-spaced paragraph that's kind – is the last thing on that page?
>
> A      The allonge.
>
> Q      And what does that mean?
>
> A      It's an acknowledgment of the assignment of the note from Stillwater National Bank to SW Loan A and it's signed by the senior vice president of Stillwater National Bank and Trust. It's something that they put on all promissory notes when -- I shouldn't say all. If it's done correctly, all promissory notes will have a stamp on them when there's been an assignment of the note to a new party to the benefit of the party acquiring the note.[46]

Appellee Pardo then testified that he was aware of the assignment:

---

[45] 2.RR.101:7–103:9.

[46] 2.RR.106:16–107:15.

Q    Were you aware that such an assignment -- well first, sir, let me ask you for the members of the jury to please read the title of that document?

A    It's an Assignment and Bill of Sale.

Q    Sir, were you aware that an assignment of the loan and the other loan documents including the limited guaranty agreements had been assigned?

A    Yes.[47]

\*\*\*

Q    Thank you. Were you aware that, sir, that that loan agreement was one of the documents that was assigned to SW Loan through the assignment that you just looked at previously?

A    Yes.[48]

\*\*\*

Q    I'm handing you, Mr. Pardo, what's been designated as Plaintiff's Exhibit 4 and would you please read the title of that document?

A    Notice of Assignment of Note.

Q    And what assignment is it referring to, sir?

A    It's assigning the Stillwater National Bank loan to SW Loan A, L.P.

---

[47] 3.RR.6:6–13.

[48] 3.RR.7:10–14.

Q    And I believe you testified previously a few minutes ago, sir, that you were aware that assignment had occurred.

Yes.[49]

The Deed Recitals also established that SW Loan was the holder of the Promissory Note and that it had been assigned all rights under the other Loan Documents:

> [Lender] assigned all its right, title and interest in, to and under the Loan Documents to [SW Loan] pursuant to that certain Assignment of Deed of Trust dated as of December 13, 2011 and recorded in the Official Records as Document No. 20110228228 and that certain Assignment and Bill of Sale dated as of December 13, 2011.
>
> ***
>
> **[SW Loan] is the present legal and equitable owner and holder of the [Promissory] Note** and the beneficiary of the Deed of Trust and all liens and security interests securing the [Promissory] Note.[50]

Finally, the jury implicitly found that SW Loan was assigned all rights under the Loan Documents when it answered "Yes" to Jury Question No. 1, which asked: "Is SW Loan the holder/owner of the Limited Guaranty Agreements executed by Anibal J. Duarte-Viera, Tony P. Pardo and Edward M. Riess [sic]?"[51]

---

[49] 3.RR.8:12–22.

[50] 5.RR.272–73 (emphasis added).

[51] CR.708.

**C.    The Borrower defaulted on the loan, SW Loan began foreclosure proceedings, and the Borrower filed bankruptcy.**

On or about June 5, 2012, Tim Murphy, a representative of SW Loan's loan servicer, sent the Borrower a Notice of Default (the "First Notice").[52] In that First Notice, the Borrower was informed that it had defaulted on the terms of its loan because: (1) it had not been making its monthly tax escrow payments; and (2) $262,322.35 in taxes due to Bexar County, Texas had not been paid because of the escrow shortage.[53] The letter indicated that SW Loan would be willing to give the Borrower thirty days to cure the tax and escrow related defaults.[54] Mr. Redman testified, however, that those defaults were never cured.[55]

On July 3, 2012, twenty-eight days after the First Notice was sent to the Borrower, an attorney from the law firm that represented SW Loan in the trial court sent a second Notice of Default to both the Borrower and the Guarantors (the "Second Notice").[56] The Second Notice again informed the Borrower that it was in default because it had failed to make *seven* of its required monthly

---

[52] 5.RR.91; 2.RR.116:16–117:10 (admitting the First Notice into evidence).

[53] 5.RR.91.

[54] *Id.*

[55] 2.RR.117:2–4.

[56] 5.RR.93–96; 2.RR.118:15–119:9 (admitting the Second Notice into evidence).

$20,000.00 tax escrow payments.[57] But the Second Notice also informed the Borrower that it was in default because it failed to make two *principal-and-interest* payments of $60,508.72 each (for a total of $121,017.44).[58] Those payments were due on May 17, 2012 and June 17, 2012, respectively.[59] The principal-and-interest defaults were different from the defaults SW Loan gave the Borrower thirty days to cure in the First Notice.[60]

Mr. Redman also testified that the Borrower failed to pay its indebtedness when he discussed the Borrower's defaults under the terms of the Deed of Trust:

> Q      … I direct your attention, sir, to Article III that is set forth at the middle of Page 6 of Plaintiff's Exhibit 9. What is that entitled, sir?
>
> A      Article III is Events of Default.
>
> Q      And what Events of Default are set forth in Article III, Mr. Redman?
>
> A      In *3.1, it's Payment of Indebtedness*; 3.2 is Performance of Obligations, and 3.3 is Default Under the Loan Documents.

---

[57] 5.RR.94.

[58] *Id.*

[59] *Id.*

[60] *Compare* 5.RR.91 *with* 5.RR.94.

Q      Are you aware of any of those three events that are enumerated on page six of Plaintiff's Exhibit 9? Did any of those events of default occur, to your knowledge, Mr. Redman?

A      Yes.

Q      Which ones?

A      3.2 and 3.3. *3.1,* yes, eventually.[61]

Because of the Borrower's defaults, SW Loan accelerated the amount due on the Promissory Note[62] and demanded that the Borrower pay $10,363,669.97 by July 10, 2012.[63] In addition, SW Loan notified the Borrower that if it failed to pay the full amount due within seven days, SW Loan might "instruct the trustee under the Deed of Trust executed to secure the [Promissory] Note to post the property pledged therein for public foreclosure."[64] It also informed that if a deficiency remained on the debt following the foreclosure sale, it might "seek to hold [the Borrower] and/or the Guarantors personally liable for any deficiency remaining after the foreclosure."[65]

---

[61] 2.RR.114:2–115:13 (emphasis added).

[62] 5.RR.95.

[63] *Id.*

[64] 5.RR.96.

[65] 5.RR.95.

After the Borrower failed to comply with the demand, a foreclosure sale was noticed and scheduled for August 7, 2012.[66] That sale was postponed, however, because the Borrower filed for bankruptcy before the sale could be completed.[67]

**D.     The Borrower's sworn bankruptcy statements acknowledged both that SW Loan's claim was undisputed and that the Guarantors were co-debtors.**

On August 7, 2012, the Borrower filed for protection under Chapter 11 of the United States Bankruptcy Code.[68] Among the Borrower's bankruptcy filings admitted into evidence was the Borrower's Schedule D.[69] That filing—*executed under the penalty of perjury* by Appellee Reiss[70]—**lists SW Loan as a secured creditor holding a non-contingent, liquidated, and *undisputed claim* for $10,292,760.61**.[71] Importantly, the Borrower's sworn bankruptcy filings also acknowledged that the Guarantors were co-debtors on the debt to SW Loan.[72]

---

[66] 2.RR.119:13–22.

[67] 2.RR.120:2–122:15 (presenting testimony regarding the Borrower filing bankruptcy and admitting documents related to the Borrower's bankruptcy into evidence); 5.RR.106–08 (Borrower's Bankruptcy Petition); 5.RR.110–44 (Borrower's bankruptcy schedules).

[68] 5.RR.106.

[69] 5.RR.118; 2.RR.116 (admitting Schedule D into evidence).

[70] 5.RR.144.

[71] 5.RR.118.

[72] 5.RR.142.

### E. SW Loan foreclosed on the property and established a deficiency.

On October 19, 2012, *the Borrower agreed* to a final order modifying the automatic stay of bankruptcy to allow SW Loan to sell the Borrower's property at foreclosure.[73] Consistent with that order, a foreclosure sale was noticed for November 6, 2012.[74] At that sale, SW Loan purchased the Borrower's property for $7,000,000.00[75] and thus established a Loan deficiency of at least $3,292,760.61 (based on the amount owed according to the Borrower's sworn bankruptcy statements).[76] Mr. Redman testified at trial that the deficiency—as of November 17, 2012—was $3,482,872.63.[77]

The Deed Recitals—issued by the substitute trustee following the foreclosure sale of the Borrower's property—are significant because they outline the history of the Loan transaction and the Borrower's default.[78] Among other

---

[73] 5.RR.146–49.

[74] 5.RR.281.

[75] 5.RR.272–75.

[76] The Borrower's sworn bankruptcy statements acknowledge SW Loan's undisputed claim for $10,292,760.61. *See* 5.RR.118. Thus, after the $7,000,000.00 sale price is credited to the Loan, the Borrower cannot deny owing at least $3,292,760.61. *See* 5.RR.74 (Deed of Trust provision explaining how a deficiency would be calculated following a foreclosure sale).

[77] 2.RR.124:25–125:4 (testifying that he believed the correct amount of the deficiency after the $7,000,000.00 credit was applied, including interest and advances, was $3,482,872.63).

[78] 5.RR.272–73.

things, the Deed Recitals show that: (1) the Borrower obtained the $10,000,000.00 Loan from the Lender[79]; (2) the Borrower's indebtedness was evidenced by the Promissory Note[80]; (3) the Deed of Trust secured the indebtedness evidenced by the Promissory Note[81]; (4) the Lender assigned all right, title, and interest in, to, and under the Loan Documents to SW Loan[82]; (5) SW Loan "is the present legal and equitable owner and holder of the [Promissory] Note and the beneficiary of the Deed of Trust and all liens and security interests securing the [Promissory] Note"[83]; (6) the substitute trustee was asked to foreclose on the Borrower's property "on account of one or more defaults in the obligations secured by the Deed of Trust"[84]; and (7) the foreclosure sale "was conducted in strict accordance with the Deed of Trust, the [notice of sale] and the law."[85]

---

[79] 5.RR.272.

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] 5.RR.273.

[84] *Id.*

[85] *Id.*

**F.      SW Loan sued the Guarantors to recover the unpaid balance on the Loan, and the Guarantors counterclaimed for a declaratory judgment seeking to validate their affirmative defenses.**

SW Loan filed its suit against the Guarantors on August 6, 2012 to recover the amount owed on the Loan.[86] The Guarantors answered and sought a counterclaim for a declaratory judgment.[87] The Guarantors' answer was not verified, despite its allegation that SW Loan was not the holder of, and had not been assigned, the Promissory Note.[88] *See* TEX. R. CIV. P. 93 ("A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit…. A denial of the genuineness of the indorsement or assignment of a written instrument upon which suit is brought by an indorsee or assignee and in the absence of such a sworn plea, the indorsement or assignment thereof shall be held as fully proved.").

---

[86] CR.8–16.

[87] CR.587–91 (Defendants' Fourth Amended Answer and Second Amended Counterclaim for Declaratory Judgment).

[88] CR.587 ("Plaintiff is not the holder of the pertinent Note guaranteed by Defendants, as the Note was not assigned under the assignment document Plaintiff relies upon as its basis for the claims in this case, and Plaintiff failed to provide any other evidence of assignment or transfer of the Note.").

More importantly, however, the Guarantors did not deny that the Borrower defaulted on the Promissory Note.[89] Nor did they claim that the Borrower's default was excused.[90] Rather, the only affirmative defenses raised by the Guarantors were: (1) that SW Loan was not the holder of the Promissory Note; and (2) that each Guarantor's liability was limited to $2,500,000.00 of principal and interest and therefore SW Loan could not seek to recover sums that were not attributable to principal and interest.[91]

With their answer, the Guarantors also filed a counterclaim seeking a declaratory judgment asking only that the trail court declare that their affirmative defenses were valid:

> 10.    Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, [Guarantors] hereby seek a declaration concerning the Assignment and Guarantees from the Court that:
>
> > a) [SW Loan] is not the holder of the [Promissory] Note and lacks standing to pursue [Guarantors] for the alleged deficiency; and

---

[89] CR.587–91.

[90] *Id.*

[91] CR.587–88.

b) [SW Loan] is not entitled to seek or recover any damages from [Guarantors] under the Guarantees aside from principal and/or interest under the [Promissory] Note.[92]

## G. The Guarantors offered no evidence of the Borrower's compliance with the Promissory Note.

The trial was held between December 1, 2014 and December 3, 2014.[93] At the trial, the Guarantors presented no evidence suggesting or stating that the Borrower complied with all of its obligations under the Promissory Note.[94] More specifically, the Guarantors offered no evidence suggesting that: (1) the Borrower repaid its $10,000,000.000 Promissory Note; (2) the Borrower remained current on all required principal, interest, and tax-escrow payments; and (3) the Borrower never filed for bankruptcy.[95]

On the contrary, the Defendants entered only two documents into evidence, neither of which suggested or established the Borrower's compliance with the Promissory Note.[96] The first was an email chain showing that the Borrower

---

[92] CR.590.

[93] 1.RR.1.

[94] *See generally* Reporter's Record.

[95] *See id.*

[96] *See* 5.RR.305–09, 311–12.

took out an additional loan from the Lender to pay *past due taxes* from 2010.[97] The Guarantors introduced the email chain to show that the Lender had allegedly agreed to allow the Borrower to split its 2011 tax payment so that it could extend the deadline for fully paying those taxes until June 30, 2012.[98] The second document was a copy of a print-out from the Bexar County Tax Assessor-Collector's web site demonstrating that—as of December 2, 2014—Bexar County allowed taxpayers to split their current-year tax payments with the first half due on November 30th of the tax year and the remainder due by June 30th of the following year.[99]

Appellee Pardo testified that—consistent with that email chain—the Lender agreed to allow the Borrower to escrow only $20,000.00 per month with the understanding that $120,000.00 (half of the $240,000.00 tax base due for 2011) would be paid from escrow in December 2011 with the remaining $120,000.00 being paid from escrow in June 2012.[100] Barring that agreement, the Lender would have required the Borrower to escrow more than $20,000.00 per

---

[97] 5.RR.305–09.

[98] 5.RR.305–09.

[99] 5.RR.311.

[100] 3.RR.42:10–45:24; 5.RR.305–07.

month for the remainder of 2011 so that it would have enough money in escrow to pay the full amount of the Borrower's 2011 taxes when they became due in January of 2012.[101]

The Guarantors offered that evidence in hopes of negating *one of* SW Loan's grounds for claiming that the Borrower had defaulted:

> [SW Loan's trial counsel]:    I have an objection as to relevance, Your Honor. This is correspondence between Mr. Pardo and Stillwater National Bank and not a correspondence or any way a communication with SW Loan A, L.P.

> THE COURT:    Are you going to tie this up some way?

> [Guarantors' counsel]: Yes, Your Honor. The plaintiff has alleged default under -- in the tax provision of the loan agreement, and we're going to show here -- and we show here that there was no default. There was a subsequent agreement after the loan agreement was executed that Stillwater National Bank was to pay the taxes on November -- in November of 2011 and they did not do so.[102]

But apart from those two documents and Mr. Pardo's testimony, which related solely to the issue of whether the Borrower's failure to timely pay its 2011 taxes constituted a default, the Guarantors presented no evidence on the Borrower's compliance with its obligations under the Promissory Note or any of

---

[101] *See id.*

[102] 3.RR.44:15–45:4.

the other Loan Documents.[103] In fact, the only other evidence presented by the Guarantors related to their claim for attorney fees that they acknowledged was based on—and was limited to—their counterclaim for a declaratory judgment.[104]

## H.   The jury found that the Borrower did not fail to comply with the Promissory Note and therefore skipped the remaining questions dealing with the Guarantors' liability to SW Loan.

The Court's Charge asked the jury first to determine whether SW Loan was the holder/owner of the Guaranty Agreements executed by the Guarantors.[105] The jury answered "Yes."[106] The jury then proceeded to Question No. 2, which asked: "If you answered "Yes" in Question No. 1, then answer the following question. Otherwise, do not answer this question. Did 1946 Property, LLC [the Borrower] fail to comply with the Promissory Note?[1] Answer 'Yes' or 'No'."[107] The footnote was a citation to Texas Pattern Jury Charge § 101.2 which

---

[103] *See generally* 3.RR.42–46 (presenting the Guarantors' direct examination of Appellee Pardo).

[104] 3.RR.50:21–54:7.

[105] CR.708.

[106] *Id.*

[107] CR.709.

is the standard pattern question for asking whether a party has breached a contract.[108]

In their closing argument to the jury, the Guarantors did not argue that the Borrower complied with the Promissory Note.[109] Instead, the Guarantors erroneously asserted that SW Loan had presented no evidence of the Borrower's default apart from the testimony of Mr. Redman, and they argued that Mr. Redman was not credible:

> Question Number Two, it's on Page 6. Did 1946 Property, LLC fail to comply with the promissory note? Did they? We're here in a loan case, a multimillion dollar loan case and do you all realize there has not been any testimony or evidence that a principal and interest payment were missed?
>
> Mr. Redman didn't say "hey, they missed a payment." His only notice was about taxes that he had the money for or they were in escrow six months earlier. They're not saying they missed payments. Took the property any way.
>
> So I think it's arguable whether or not you can say yes to number two. You're stuck with what they've given you and they bear the burden. It's their burden to prove by a preponderance of the evidence that 1946 Property, LLC failed to comply with the promissory note, and your job is to judge the credibility of their one

---

[108] CR.709; Tex. Pattern Jury Charge § 101.2.

[109] 4.RR.25:18–40:13.

witness whose testimony has been inconsistent throughout this entire dispute, his credibility on that issue.[110]

During their deliberations, the jury asked the judge whether SW Loan's exhibits 4 [Notice of Assignment of Note], 5 [Promissory Note], and 16 [Situs's calculations of amounts due on the Loan] were entered into evidence, noting that they did not receive copies of those documents.[111] Judge Gabriel responded: "Plaintiff's Exhibits 4, 5 and 16 were referred to in testimony but were not offered in evidence. Please continue with your deliberations."[112]

The jury answered "No" to Question No. 2—finding that the Borrower did not fail to comply with the Promissory Note[113]—and therefore did not answer Question Nos. 3 through 15 dealing both with the Guarantors' liability under the Guaranty Agreements and SW Loan's attorney fees.[114] Instead, the jury proceeded to answer Question No. 16, finding that the Guarantors' reasonable and necessary attorney fees were $7,825.00 for representation in the trial court, $7,500.00 for representation through appeal to the court of appeals, and

---

[110] 4.RR.32:7–33:1.

[111] 4.RR.42:12–16; CR.703.

[112] 4.RR.42:17–43:9; CR.702.

[113] CR.709.

[114] CR.710–23.

$10,000.00 for representation at the petition for review stage in the Supreme Court of Texas.[115]

SW Loan filed a Motion to Disregard Jury Findings and for Judgment Notwithstanding the Verdict on January 20, 2015.[116] In that motion, SW Loan argued that there was legally insufficient evidence to support the jury's response to Questions No. 2 and 16 and that the jury's response to Question No. 2 was "against the weight of the evidence."[117] SW Loan sought a directed verdict and, in the alternative, a new trial so that the jury could consider the questions it did not answer because of its mistaken response to Question No. 2.[118] The trial court entered its Final Judgment on January 28, 2015[119] and entered its Order Denying Plaintiff's Motion to Disregard Jury Findings and Judgment Notwithstanding the Verdict on March 20, 2015.[120] SW Loan then perfected its appeal by filing a Notice of Appeal in the trial court on April 27, 2015. *See* TEX. R. APP. P. 26.1(a).

---

[115] CR.724–25.

[116] CR.732–72.

[117] CR.732–33.

[118] CR.733 & n.2.

[119] CR.775–77 (App. A).

[120] CR.803.

## SUMMARY OF THE ARGUMENT

The evidence conclusively established that the Borrower was liable on the Promissory Note. Indeed, it was conclusively established that: (1) the Borrower signed a Promissory Note in which it promised to repay the $10,000,000.00 Loan; (2) SW Loan was the holder of the Promissory Note and the other Loan Documents; (3) the Borrower did not repay the Loan, resulting in a deficiency; and (4) the Borrower filed for bankruptcy. The evidence is therefore both legally and factually insufficient to support the jury's finding that the Borrower did not fail to comply with the Promissory Note. Consequently, the trial court's take-nothing judgment on the jury's verdict must be reversed.

In addition, the trial court abused its discretion in granting attorney fees to the Guarantors. It is well established in Texas that a defendant cannot bring a counterclaim for a declaratory judgment seeking solely to resolve issues pending before the court. Because the Guarantors' counterclaim for declaratory judgment sought only to resolve their defenses to SW Loan's claims, it was barred as a matter of law. And because that counterclaim was the sole basis for awarding the Guarantors their at-

torney fees, the judgment awarding attorney fees cannot stand. The judgment of the trial court must therefore be reversed, judgment should be rendered in favor of SW Loan with respect to the Guarantors counterclaim for declaratory judgment and attorney fees, and this case should be remanded for a new trial.

## ARGUMENT

### A. The evidence is legally and factually insufficient to support the jury's answer to Question No. 2.

#### 1. Standard and Scope of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof at trial, it "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Ingham v. O'Block*, 351 S.W.3d 96, 99–100, (Tex. App.—San Antonio 2011, pet. denied). The reviewing court "must first examine the record for evidence supporting the finding while ignoring all evidence to the contrary unless a reasonable fact-finder could not." *Ingham*, 351 S.W.3d at 100 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Dow Chem.*, 46 S.W.3d at 241). But "[i]f there is no evidence to support the finding, the reviewing court will then examine the entire record to

determine if the contrary proposition is established as a matter of law." *Dow Chem.*, 46 S.W.3d at 241; *Ingham*, 351 S.W.3d at 100. To sustain a point of error, "the contrary proposition must be conclusively established." *Dow Chem.*, 46 S.W.3d at 241; *Ingham*, 351 S.W.3d at 100.

Where a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof at trial, it "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242; *Ingham*, 351 S.W.3d at 100. The reviewing court "must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem.*, 46 S.W.3d at 242; *Ingham*, 351 S.W.3d at 100. In setting aside the verdict, the reviewing court "must 'detail the evidence relevant to the issue' and 'state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.'" *Dow Chem.*, 46 S.W.3d at 242 (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)); *Ingham*, 351 S.W.3d at 100.

Here, there is no evidence that could support a finding that the Borrower repaid and otherwise complied with the Promissory Note. And, as will be dis-

cussed below, the jury's finding on that issue is conclusively refuted by the evidence. At the very least, the jury's response to Question No. 2 is "so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *See Dow Chem.*, 46 S.W.3d at 242; *Ingham*, 351 S.W.3d at 100.

### 2. SW Loan conclusively established every element of a claim for breach of the Promissory Note.

To recover against the Borrower for breach of the Promissory Note, SW Loan had the burden of proving: (1) the existence of the Promissory Note; (2) that the Borrower signed the Promissory Note; (3) that SW Loan is the holder of the Promissory Note; and (4) that an amount is due and payable on the Promissory Note. *See Doncaster v. Hernaiz*, 161 S.W.3d 594, 602 (Tex. App.—San Antonio 2005, no pet.) ("To succeed on her traditional motion for summary judgment in this suit on an unpaid debt, Hernaiz had the burden to establish (1) the existence of the debt or note; (2) that Doncaster had signed the note; (3) that Hernaiz was the holder of the note; and (4) that a balance was due and owing under the note."); *Hudspeth v. Investor Collection Servs. Ltd. P'ship*, 985 S.W.2d 477, 479 (Tex. App.—San Antonio 1998, no pet.) ("In order to recover for the deficiency on the note, ICS had to establish (1) the notes in question, (2) that Hudspeth

signed the notes, (3) that ICS was the legal owner and holder of the notes, and

(4) that a certain balance was due and owing under the notes.").[121]

### a. The evidence conclusively established both the existence of the Promissory Note and that it was signed by the Borrower.

SW Loan has conclusively proved both the existence of the Promissory

Note and that it was signed by the Borrower.[122] Indeed, Appellee Pardo identified

the Promissory Note at trial and testified that both he and Appellee Duarte-Viera

signed the Promissory Note on behalf of the Borrower:

---

[121] Although the Loan Agreement has a choice-of-law provision stating that the Promissory Note (as one of the Loan Documents) would be "deemed to be a contract made under the laws of the State of Oklahoma," 5.RR.28, neither party filed a motion under Rule 202 or otherwise asked the trial court to take judicial notice of the applicable law of the State of Oklahoma governing the elements SW Loan must prove to recover on the Promissory Note. Therefore, it is presumed that Oklahoma law and Texas law are identical. *See Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 291 (Tex. App.—Fort Worth 2007, pet. withdrawn) (citing *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 695 (Tex. 2006) (Brister, J., dissenting); *Johnson v. Structured Asset Servs.*, LLC, 148 S.W.3d 711, 720 (Tex. App.—Dallas 2004, no pet.); *Burns v. Resolution Trust Corp.*, 880 S.W.2d 149, 151 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458, 465 n.2 (Tex. 1969)) ("Because BNSF never filed a rule 202 motion requesting the trial court to take judicial notice of other states' law, the presumption arises that the law of the other states in question is identical to Texas law."). Furthermore, the Guarantors resisted SW Loan's Motion for Summary Judgment at the trial court by arguing Texas law on the issue of what SW Loan must prove to prevail on a claim under the Promissory Note. CR.539. Thus, the Guarantors have waived the application of Oklahoma law to this issue. *See DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 196–97 & n.31 (Tex. App.—Fort Worth 2012, no pet.) (holding that party waived argument on choice-of-law issue by acting in a manner inconsistent with that argument in the trial court).

[122] *See generally supra* notes 22–31 and surrounding text.

Q    Mr. Pardo, I'm going to hand you what's been designated as Plaintiff's Exhibit 5, and would you please read that -- the title of that document?

A    This is a Promissory Note.

Q    In the amount -- how much is that promissory note, is the amount of the note please, sir?

A    Ten million.

Q    And if you turn to the end of that document, sir, who signed that note?

A    **I signed it as a borrower and manager of 1946 Property as well as my partner, Anibal J. Duarte-Viera.**[123]

Mr. Redman similarly identified the Promissory Note:

Q    Mr. Redman, I'm handing you what's been designated as Plaintiff's Exhibit 5. What is Plaintiff's Exhibit 5, Mr. Redman?

A    This is the promissory note, the $10 million promissory note that was executed by 1946 Property, LLC and promises to pay Stillwater National Bank and Trust. It was executed April 17, 2008.[124]

Furthermore, under Texas law, the recitals in a substitute trustee's deed are *prima facie* evidence of the truth of the matters asserted in those recitals. *See Choice Pers. No. Four, Inc. v. 1715 Johanna Square Ltd.*, No. 01-05-00830-CV,

---

[123] 3.RR.9:2–12 (emphasis added).

[124] 5.RR.106:16–22.

2007 WL 1153046, at *6 (Tex. App.—Houston [1st Dist.] Apr. 13, 2007, pet. denied) (mem. op.) ("Recitals in a deed are presumed correct, unless rebutted by competent evidence."); *see also Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264, 266 (Tex. App.—Houston 1991, no writ) ("The substitute trustee's deed, which was admitted in evidence, recites compliance with all conditions of the deed of trust. Those recitals constitute prima facie evidence of the validity of the foreclosure sale …."); *Choice Pers. No. Four, Inc. v. Richardson*, No. 14-05-00675-CV, 2006 WL 2074681, at *5 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (Guzman, J.) (mem. op.) ("The Choice Companies offered no evidence rebutting the presumption that these recitals are correct; therefore, the Owners were not required to produce evidence proving the deed's recitals."); *Kirkman v. Amarillo Sav. Ass'n*, 483 S.W.2d 302, 306 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.) ("The trustee's deed contained factual recitations of the default and of the various steps taken in the foreclosure all in accordance with the procedural steps set forth in the deed of trust, and such recitals are presumed to be correct, unless rebutted by competent evidence.").

The Deed Recitals executed in connection with the sale of the Borrower's property at foreclosure state, among other things, that

> Stillwater National Bank and Trust Company ("Original Lender") made a loan (the "Loan") to 1946 Property, LLC, a Texas limited liability company ("Borrower"), in the principal amount of $10,000,000.00, the indebtedness of which is *evidenced by that certain Promissory Note made by Borrower and dated April 17, 2008* (the "Note").[125]

The Guarantors offered no evidence rebutting those statements.[126] Therefore, both the existence of the Promissory Note and the fact that it was made by the Borrower were established as a matter of law. *See id.*

### b. The evidence conclusively established that SW Loan was the holder of the Promissory Note.

SW Loan also conclusively established that it holds the Promissory Note and the other Loan Documents.[127] Indeed, the Assignment and Bill of Sale—in which the Lender transferred all right, title, and interest in and to the Promissory Note and the other Loan Documents—was admitted into evidence.[128] Mr. Redman also testified that the Promissory Note contained an allonge evidencing its

---

[125] 5.RR.272 (emphasis added).

[126] 5.RR.272.

[127] *See generally supra* notes 44–51 and surrounding text.

[128] 5.RR.6–8 (Assignment and Bill of Sale); 2.RR.100:4–13 (admitting Assignment and Bill of Sale into evidence).

assignment to SW Loan.[129] Appellee Pardo also testified that he was aware that the Loan Documents were assigned to SW Loan.[130]

Moreover, the Deed Recitals state that SW Loan is the legal holder of the Promissory Note and that it was assigned all rights under the other Loan Documents:

> [Lender] assigned all its right, title and interest in, to and under the Loan Documents to [SW Loan] pursuant to that certain Assignment of Deed of Trust dated as of December 13, 2011 and recorded in the Official Records as Document No. 20110228228 and that certain Assignment and Bill of Sale dated as of December 13, 2011.
>
> ***
>
> **[SW Loan] is the present legal and equitable owner and holder of the [Promissory] Note** and the beneficiary of the Deed of Trust and all liens and security interests securing the Note.[131]

As discussed above, those Deed Recitals are *prima facie* evidence of the truth of the matters they assert. *See 1715 Johanna Square Ltd.*, 2007 WL 1153046, at *6; *see also Deposit Ins. Bridge Bank, N.A., Dallas*, 804 S.W.2d at 266; *Richardson*, 2006 WL 2074681, at *5; *Kirkman*, 483 S.W.2d at 306. The Guarantors offered no evidence rebutting the presumption that SW Loan was the holder of the

---

[129] 2.RR.106:23–107:15 (emphasis added).

[130] 3.RR.6:6–13, 7:10–14, 8:12–22.

[131] 5.RR.272–73 (emphasis added).

Promissory Note and the other Loan Documents. Therefore, SW Loan's status as the holder of the Promissory Note was established as a matter of law.

Finally, the jury implicitly found that SW Loan was assigned all rights under the Loan Documents when it answered "Yes" to Jury Question No. 1, which asked: "Is SW Loan the holder/owner of the Limited Guaranty Agreements executed by Anibal J. Duarte-Viera, Tony P. Pardo and Edward M. Riess [sic]?"[132] The evidence therefore allows only one conclusion—SW Loan held the Promissory Note.

### c. The evidence conclusively established that there was an amount due and payable on the Promissory Note.

Mr. Redman testified that the deficiency on the Borrower's Loan immediately after the foreclosure sale was $3,482,872.63.[133] That testimony alone was sufficient to establish an amount due and owing. *Hudspeth*, 985 S.W.2d at 479 ("A lender need not file detailed proof reflecting the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment.").

---

[132] CR.708.

[133] 2.RR.124:25–125:4 (testifying that he believed the correct amount of the deficiency after the $7,000,000.00 credit was applied, including interest and advances, was $3,482,872.63).

But even without Mr. Redman's testimony, SW Loan conclusively established through documentary evidence that an amount was due and owing on the Promissory Note. The Borrower's sworn bankruptcy statements, which were submitted after the Borrower received notice of its default and before its property was sold at foreclosure, acknowledged that SW Loan held a non-contingent, liquidated, and *undisputed claim* for $10,292,760.61.[134] The Substitute Trustee's Deed and Bill of Sale establishes that the Borrower's property was sold for $7,000,000.00.[135] Thus, using the contractually agreed upon method of calculating the Borrower's deficiency,[136] it cannot be disputed that a deficiency of at least $3,292,760.61 was due and owing on the Promissory Note.

Because the evidence conclusively established every element necessary for SW Loan to prevail on a claim against the Borrower under the Promissory Note, the evidence was legally and factually insufficient to support the jury's response to Question No. 2.

---

[134] 5.RR.118.

[135] 5.RR.273–74.

[136] 5.RR.74.

**3.    The Borrower's default under the Promissory Note was conclusively established according to the unambiguous terms of the governing Loan Agreement.**

Separate instruments or contracts that are "executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together." *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981); *see also Mem'l Med. Ctr. of East Texas v. Keszler*, 943 S.W.2d 433, 434 (Tex. 1997) ("When dealing with two documents comprising a single agreement, a court should read and construe them together."); *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 59 (Tex. App.—San Antonio 2005, pet. denied) (same).

The Loan Agreement, which governed the terms of the Loan transaction, defined the terms under which the Borrower would be in default under each of the Loan Documents that were executed in connection with the Loan—including the Promissory Note:

> **DEFAULT**    Each of the following shall constitute a Default hereunder *and under each of the Loan Documents* ("Default").[137]

Because the Promissory Note is defined by the Loan Agreement as one of the "Loan Documents,"[138] and those documents together constituted the par-

---

[137] 5.RR.23 (emphasis added).

ties' "entire agreement,"[139] proof of a condition of default as outlined in the Loan Agreement necessarily constituted proof of a default under the Promissory Note.

Among the conditions of default unambiguously outlined by the Loan Agreement were bankruptcy, nonpayment of the Promissory Note, nonpayment of another amount payable under the Loan Documents, and the breach of any covenant made in the Loan Documents.[140] Each of those conditions was proved by SW Loan.

The evidence established that the Borrower filed for bankruptcy.[141] And, as discussed above, the evidence established that the Borrower failed to fully repay its Loan, resulting in a deficiency.[142] Thus, there can be no question that the Borrower defaulted under the terms of the Loan Agreement and the Promissory

---

[138] *See* 5.RR.12–13 § 6 1 1 ("This Loan Agreement, *the [Promissory] Note*, the Deed of Trust, …, the Limited Guaranty Agreements, … and all other documents executed pursuant thereto or in connection therewith as might be required by the Lender (*all of the foregoing are referred to herein as the 'Loan Documents'*) shall have been duly authorized, executed and delivered to Lender." (emphasis added)).

[139] 5.RR.28 ("This Loan Agreement, all of the Loan Documents and the other loan documents executed pursuant hereto or in connection herewith constitute the entire agreement between the parties….").

[140] 5.RR.23–25; *see supra* notes 14–15 and surrounding text.

[141] 2.RR.120:2–122:15 (presenting testimony regarding the Borrower filing bankruptcy and admitting documents related to the Borrower's bankruptcy into evidence); 5.RR.106–08 (Borrower's Bankruptcy Petition); 5.RR.110–44 (Borrower's bankruptcy schedules).

[142] *See supra* notes 133–136 and surrounding text.

Note. Moreover, the statements made by SW Loan's representatives in the two Notices of Default—that the Borrower failed to make *two* principal-and-interest payments and *seven* required tax escrow payments—were uncontroverted.[143] In addition, Mr. Redman testified that the Borrower never cured its tax defaults, and the Borrower's own sworn bankruptcy statements acknowledge owing $560,699.16 to Bexar County as of September 14, 2012.[144] Thus, even if one were to assume that the Borrower should have been given until June 30, 2012 to pay its 2011 taxes, it cannot be questioned that the Borrowers did not pay those taxes by June 30, 2012. As such, there can be no question that the Borrowers also defaulted by failing to make payments on the Promissory Note when due, by failing to make tax escrow payments when due, and by failing to promptly pay its taxes to Bexar County.

Because default under the terms of the Loan Agreement was conclusively established, default under the Promissory Note was likewise conclusively established. Accordingly, the evidence is legally and factually insufficient to support the jury's response to Question No. 2.

---

[143] *See supra* notes 52–59 and surrounding text.

[144] 5.RR.118.

#### 4. Unrebutted *prima facie* evidence established the Borrower's default.

Unrebutted *prima facie* evidence shows that the Borrower defaulted on its obligation to repay the Promissory Note. As discussed earlier, the recitals in a deed are presumed correct unless rebutted by competent evidence. *See 1715 Johanna Square Ltd.*, 2007 WL 1153046, at \*6; *see also Deposit Ins. Bridge Bank, N.A., Dallas*, 804 S.W.2d at 266; *Richardson*, 2006 WL 2074681, at \*5; *Kirkman*, 483 S.W.2d at 306.

The Deed Recitals stated that the indebtedness evidenced by the Promissory Note was secured by the Deed of Trust,[145] that the substitute trustee was asked to sell the Borrower's property at foreclosure "on account of one or more defaults in the obligations secured by the Deed of Trust,"[146] and that the foreclosure sale was conducted in accordance with the Deed of Trust and the law.[147] Thus, SW Loan produced *prima facie* evidence of the Borrower's default on its obligation to repay the indebtedness evidenced by the Promissory Note and secured by the Deed of Trust. There was no evidence introduced to rebut any of the statements in the Deed Recitals. Therefore, SW Loan introduced evidence

---

[145] 5.RR.272.

[146] 5.RR.273.

[147] *Id.*

that establishes—as a matter of law—that the Borrower defaulted on its obligation to repay the indebtedness secured by the Promissory Note.

Two decisions from the First and Fourteenth Courts of Appeals are instructive on this point. *See 1715 Johanna Square Ltd.*, 2007 WL 1153046, at *6; *Richardson*, 2006 WL 2074681, at *5. In *Richardson*, the appellants (who were also the appellants in *1715 Johanna Square Ltd.*) argued that summary judgment was improper because the appellees [the "Owners"] had "produced no evidence that, at the time of the foreclosure sale, Befral Properties [the note holder] owned the note and Investment Choices [the borrower] was in default." *Richardson*, 2006 WL 2074681, at *5. The court, in an opinion authored by Justice Eva M. Guzman, disagreed:

> This is incorrect. The Owners produced the Substitute Trustee's Deed that states Berfal Properties owns the note and all prerequisites to the sale have been satisfied. The recitals in the Substitute Trustee's Deed constitute prima facie evidence of the validity of the foreclosure sale. *See Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264, 266 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding that recitals in a deed are presumed to be correct, unless rebutted by competent evidence). The Choice Companies offered no evidence rebutting the presumption that these recitals are correct; therefore, the Owners were not required to produce evidence proving the deed's recitals.

*Richardson*, 2006 WL 2074681, at *5.

The First Court of Appeals reached the same conclusion in *1715 Johanna Square Ltd.* under "facts and arguments that [were] virtually identical" to those at issue in *Richardson*:

> The Choice Companies assert that the foreclosure sale was invalid because Substitute Trustee's Deed does not mention that any borrower had defaulted, and the Purchasers did not produce evidence that Berfal Properties owned the note on which it foreclosed. The Fourteenth Court of Appeals considered this assertion, and concluded that the recitals in the Substitute Trustee's Deed constituted prima facie evidence of the validity of the foreclosure sale. *Choice Personnel*, 2006 WL 2074681 at *5. We agree with the Fourteenth Court of Appeals. Recitals in a deed are presumed correct, unless rebutted by competent evidence. *Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264, 266 (Tex. App.—Houston [1st Dist.] 1991, no writ). The Purchasers produced the Substitute Trustee's Deed entered into by Gilmore and Richardson, which states that Berfal Properties owns the note and that all prerequisites to the foreclosure sale were satisfied. The Fourteenth Court of Appeals correctly noted that Choice Companies offered no competent evidence to rebut the presumption that these recitals are correct. *Choice Personnel*, 2006 WL 2074681 at *5. We conclude, as did the Fourteenth Court of Appeals, that production of the Substitute Trustee's Deed was sufficient evidence that Berfal Properties owned the note and that Investment was in default. *See id.*

*1715 Johanna Square Ltd.*, 2007 WL 1153046, at *6.

Here, as in *Richardson* and *1715 Johanna Square Ltd.*, SW Loan introduced the Substitute Trustee's Deed and Bill of Sale that provided unrebutted, *prima facie* evidence of the Borrower's default under the Promissory Note. Thus, the

Borrower's default under the Promissory Note was established by SW Loan as a matter of law, and the evidence was legally and factually insufficient for the jury to conclude that the Borrower complied with the Promissory Note.

**5.** **Neither the fact that Bexar County allows a split-payment option nor Mr. Redman's credibility alters the inescapable conclusion that the Borrower defaulted on the Promissory Note.**

As discussed above, SW Loan conclusively proved that the Borrower defaulted on its obligations under the Promissory Note as a matter of law. That conclusion is inescapable based on documentary evidence that has nothing to do with whether SW Loan could have obtained a tax extension on behalf of the Borrower or whether Mr. Redman is a credible witness. The Guarantors' strategy both at trial and in resisting SW Loan's Motion to Disregard Jury Findings and for Judgment Notwithstanding the Verdict was to argue that: (1) either SW Loan or the Lender "caused the default" by not obtaining a tax-payment extension on behalf of the Borrower; and (2) that Mr. Redman lacked credibility.[148] Both assertions are incorrect, and both are irrelevant to the issue of whether there is sufficient evidence to conclude that the Borrower complied with the Promissory Note.

---

[148] *See* CR.791–92; 4.RR.32:7–33:1.

### a. The Borrower's defaults were not limited to its failure to pay its 2011 taxes when due.

The Guarantors' split-payment argument is a red herring. While the evidence arguably showed that the Borrower had escrowed enough money ($120,000.00) to obtain an extension on the balance of its 2011 taxes until June of 2012,[149] that same evidence also establishes that the Borrower failed to make its required monthly $20,000.00 escrow payments.[150] Indeed, if the Borrower had complied with its obligation to make the $20,000.00 monthly escrow payments beginning June 5, 2011,[151] SW Loan would have held at least $260,000.00[152] in escrow by June 5, 2012 (the date of the First Notice).[153] Instead, SW Loan held only $120,086.38.[154] This is consistent with the First Notice's statement that the Borrower failed to include its monthly escrow payment with its payments for principal and interest[155] and with the Second Notice's

---

[149] 5.RR.91, 305–09; 310–11.

[150] 5.RR.91.

[151] *See* 5.RR.34 § 2 4 ("Commencing on June 5, 2011 and by the 5th day of each month thereafter, the Borrower will deposit or cause to be deposited $20,000[.]00 in immediately available funds per month in the Account."); 5.RR.305–09.

[152] 13 months at $20,000.00 per month would equal $260,000.00.

[153] 5.RR.91.

[154] *Id.*

[155] 5.RR.91.

statement that the Borrower failed to make *seven* of its monthly escrow payments.[156] The Borrower therefore defaulted on its obligations by not making its monthly tax escrow payments; it does not matter whether it *also* defaulted by not paying the full amount of its taxes when due. The Guarantors' argument that the Lender or SW Loan somehow "caused the default" is fallacious—neither the Lender nor SW Loan caused the Borrower to stop making its monthly tax escrow payments.

Moreover, assuming that the Guarantors could have showed that the Lender somehow "caused the default," that argument would have constituted an affirmative defense (assuming that such a defense would have been available). It was not, however, pleaded as an affirmative defense.[157] *See City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 746 (Tex. App.—Fort Worth 2008, pet. dism'd) ("[T]he contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded or it is waived."). And the jury was not asked in Question 2 to determine whether the Borrower had proved

---

[156] 5.RR.94.

[157] CR.587–88.

such an affirmative defense. Question No. 2 asked whether the Borrower failed to comply with the Promissory Note, not whether the Borrower's failure was excused.[158] Thus, the jury's response to Question No. 2 could not possibly be upheld on grounds that the Borrower's failure to comply was excused.

The opinion of the Fifth Court of Appeals in *Burlington Northern Railroad Co. v. General Projection Systems, Inc.*, although non-precedential, is instructive on this issue:

> GPS argues on appeal that its breach of contract was excused because Burlington prevented GPS's performance by failing to timely make the rooms ready for installation and by delaying the project through numerous design changes. The jury, however, did not find that GPS breached and that its breach was excused; instead, it found that GPS did not breach the contract. Although a question in the charge asked if GPS's performance was excused, the jury did not reach that question because the question was conditioned on a finding that Burlington did not breach the contract, rather than on a finding that Burlington breached the contract. Because GPS did not obtain a jury finding on the defense of excuse and the defense is not conclusively established, the judgment for GPS on its breach of contract claim cannot be upheld in this appeal on the defense of excused breach. *See Peterson v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 552 (Tex. App.—Dallas 1991, no writ); *see also* TEX. R. CIV. P. 279.

---

[158] CR.709.

*Burlington N. R.R. Co. v. Gen. Projection Sys., Inc.*, No. 05-97-00425-CV, 2000 WL 1100874, at *6 (Tex. App.—Dallas Aug. 8, 2000, pet. denied) (not designated for publication) (opinion on rehearing). Because the Guarantors neither pleaded excuse as an affirmative defense nor obtained a jury finding on that defense, its argument that SW Loan or the Lender "caused the default" is legally irrelevant.

Furthermore, even if one were to incorrectly assume that the Borrower complied with its tax-related obligations, that would not allow one to infer that it complied with *all* of its other obligations under the Promissory Note. Indeed, negating one ground of default would not be sufficient to negate the other grounds of default conclusively proved by the evidence—including the Borrower's failure to fully repay the Loan and its bankruptcy. There is simply no grounds on which the jury could reasonably have concluded that the Borrower complied with all of its obligations under the Promissory Note, given that it was presented with conclusive evidence to the contrary.

### b. The jury was not free to ignore conclusive evidence of the Borrower's default based on its assessment of Mr. Redman's credibility.

The Guarantors also argued that the jury was free to conclude that SW Loan had not proved its case based solely on its assessment of Mr. Redman's credibility.[159] While it is true that "[j]urors are the sole judges of credibility of the witnesses and the weight to give their testimony," their "decisions regarding credibility must be reasonable." *City of Keller*, 168 S.W.3d at 819–20. Jurors are not permitted to "ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." Thus, they were not free to simply ignore everything Mr. Redman said.

Moreover, while courts may not "substitute their opinions on credibility for those of the jurors," jurors likewise may not "substitut[e] their opinions for undisputed truth. **When evidence contrary to a verdict is conclusive, it cannot be disregarded**." *Id.* (emphasis added). As outlined above, the documentary evidence submitted in this case was uncontroverted, and it conclusively established the Borrower's liability on the Promissory Note. Consequently, the jury

---

[159] CR.792–93.

was not free to conclude that SW Loan failed to prove its case simply because it may have questioned Mr. Redman's credibility.

**B.** **The trial court abused its discretion in awarding attorney fees to the Guarantors.**

Although the issue of whether to award attorney fees under the UDJA is typically a matter left to the court's discretion, it is well settled in Texas that a defendant may not bring a counterclaim seeking a declaratory judgment on issues that are already before the court. *See BHP Petroleum Co. Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is 'not available to settle disputes already pending before a court.'" (quoting *Heritage Life v. Heritage Group Holding*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1998, writ denied))); *Bexar Cnty. Appraisal Review Bd. v. First Baptist Church*, 846 S.W.2d 554, 561 (Tex. App.—San Antonio 1993, writ denied) ("[A] litigant may not seek a declaratory judgment in an existing suit simply to recover attorney's fees that are otherwise not authorized by statute.").

Here, the Guarantors'—in a transparent attempt to obtain attorney fees to which they otherwise were not entitled—counterclaimed seeking only a judg-

ment declaring the validity of their affirmative defenses to SW Loan's pending claims[160]:

> 10.    Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, [Guarantors] hereby seek a declaration concerning the Assignment and Guarantees from the Court that:
>
> a) [SW Loan] is not the holder of the [Promissory] Note and lacks standing to pursue [Guarantors] for the alleged deficiency; and
>
> b) [SW Loan] is not entitled to seek or recover any damages from [Guarantors] under the Guarantees aside from principal and/or interest under the [Promissory] Note.[161]

Accordingly, it was an abuse of the trial court's discretion to award attorney fees to the Guarantors. *See BHP Petroleum Co.*, 800 S.W.2d at 841; *Bexar Cnty. Appraisal Review Bd.*, 846 S.W.2d at 561; *see also Durham Transp. Co., Inc., v. Beettner*, 201 S.W.3d 859, 873 (Tex. App.—Waco 2006, pet. denied) ("[I]t is an abuse of discretion to award attorney's fees under the Uniform Declaratory Judgments Act if the claim for declaratory relief is urged solely as a vehicle to obtain attorney's fees."). The trial court's fee award must therefore be reversed.

---

[160] *See supra* notes 91–92 and surrounding text.

[161] CR.590.

# CONCLUSION AND PRAYER

It cannot be disputed that the Borrower took out a $10,000,000.00 Loan that it did not repay. In fact, it filed bankruptcy to avoid paying back that Loan. The collateral it pledged as security was lawfully sold, resulting in a deficiency that remains unpaid. SW Loan was entitled to recover that deficiency both from the Borrower and from the Guarantors. Nevertheless, the jury concluded that the Borrower did not fail to comply with its obligations under the Promissory Note. It therefore did not reach the other questions dealing with the extent of the Guarantors' liability to SW Loan. The trial court then rendered a take-nothing judgment based on the jury's verdict. Because the evidence supporting that verdict was both legally and factually insufficient, the trial court's judgment must be reversed.

The trial court also abused its discretion in awarding attorney fees to the Guarantors for their baseless declaratory-judgment counterclaim. The trial court's judgment with respect to both its declaratory ruling and its award of attorney fees must therefore be reversed and rendered in favor of SW Loan.

Accordingly, SW Loan requests that the Final Judgment of the trial court, signed January 28, 2015, be reversed, that judgment be rendered in favor of SW

Loan with respect to the Guarantors' counterclaim for a declaratory judgment and attorney fees, and that this case be remanded for a new trial to determine the Guarantors' liability to SW Loan. Alternatively, SW Loan requests that the Court reverse all portions of the trial court's judgment that cannot withstand SW Loan's challenges and render its judgment accordingly. SW Loan also requests any other relief to which it may be entitled.

Respectfully submitted,

HUNTON & WILLIAMS LLP

By: */s/ Bryan C. Bond*

JOHN T. GERHART, JR.
jgerhart@hunton.com
State Bar No. 00784122

BRYAN C. BOND
bbond@hunton.com
State Bar No. 24082701

1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

COUNSEL FOR APPELLANT

# CERTIFICATE OF COMPLIANCE

I certify that this document contains 12,834 words, excluding the sections exempted by Texas Rule of Appellate Procedure 9.4. The body font is 14pt, and the footnote font is 12pt.

*/s/ Bryan C. Bond*_____
Bryan C. Bond

# CERTIFICATE OF SERVICE

A copy of this Appellants' Brief was sent on this 10th day of August 2015 to the following counsel via email:

**Counsel for Appellees**

Robert A. McNiel
rmcniel@deanslyons.com
State Bar No. 24043814
Kathleen Kilanowski
kkilanowski@deanslyons.com
State Bar No. 24053303

Deans & Lyons, LLP
325 N. Saint Paul Street, Suite 1500
Dallas, Texas 75201-3891

*/s/ Bryan C. Bond*
Bryan C. Bond

# No. 04-15-00255-CV

## In the Fourth Court of Appeals
## San Antonio, Texas

**SW Loan A, L.P.**,

*Appellant*,

v.

**Anibal J. Duarte-Viera**, **Antonio P. Pardo**, and
**Edward M. Reiss**,

*Appellees*.

## APPENDIX TO BRIEF OF APPELLANT

From the 131st District Court, Bexar County, Texas, No. 2012-CI-12742
The Honorable John D. Gabriel Presiding

<table>
<tr><td rowspan="3">Counsel for Appellant:</td><td>John T. Gerhart, Jr.<br>jgerhart@hunton.com<br>State Bar No. 00784122</td></tr>
<tr><td>Bryan C. Bond<br>bbond@hunton.com<br>State Bar No. 24082701</td></tr>
<tr><td>Hunton & Williams LLP<br>1445 Ross Ave., Ste. 3700<br>Dallas, Texas  75202<br>Telephone: (214) 979-3000<br>Facsimile: (214) 880-0011</td></tr>
</table>

# INDEX TO APPENDIX

**Location in Record**

Tab A        Final Judgment of the Trial Court        CR.775–77

Tab B        Jury Charge and Verdict        CR.704–31

# Tab A



2012CI12742 -D131

CAUSE NO. 2012-CI-12742

| | | |
|---|---|---|
| SW LOAN A, L.P., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | BEXAR COUNTY, TEXAS |
| ANIBAL J. DUARTE-VIERA, | § | |
| ANTONIO P. PARDO, and | § | |
| EDWARD M. REISS | § | |
| | § | 131ST |
| | § | |
| Defendant(s). | § | 166TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

On December 1, 2014, this case was called for trial. Plaintiff SW Loan A, L.P. appeared by and through its attorney and announced ready for trial. Defendant Antonio P. Pardo appeared in person and through his attorney and announced ready for trial. Defendants Anibal J. Duarte-Viera and Edward M. Reiss appeared through their attorney and announced ready for trial.

After a jury was impaneled and sworn, it heard evidence and arguments of counsel. In response to the jury charge, the jury made findings that the Court received, filed, and entered of record. The charge of the court and the verdict of the jury are incorporated herein for all purposes by reference. The unanimous jury therefore determined that ANIBAL J. DUARTE-VIERA, ANTONIO P. PARDO, and EDWARD M. REISS were not responsible for Plaintiff's claims.

The jury further awarded Defendants attorneys' fees in the amount of $7,825.00 for representation at the trial court level; $7,500.00 for representation through appeal to the court of appeals should any appeal be filed; and $10,000.00 for representation at the petition for review stage in the Supreme Court of Texas, should any appeal be so presented.

Defendants' counter-suit for declaratory judgment was submitted to the Court. The Court, having considered the contents of its file, including but not limited to all pleadings, the arguments

768

of counsel at trial, and the evidence presented at trial, finds, as a matter of law, that the express terms of the Limited Guaranty Agreements executed by each of the Defendants provide that each Defendant personally guaranteed principal and interest only up to the amount of $2,500,000.00; no other amounts such as taxes, environmental and/or appraisal costs, were guaranteed by the Defendants.

The Court hereby RENDERS a take-nothing judgment in favor of ANIBAL J. DUARTE-VIERA, ANTONIO P. PARDO, and EDWARD M. REISS, against Plaintiff.

It is therefore ORDERED, ADJUDGED and DECREED that Plaintiff take nothing by its suit against ANIBAL J. DUARTE-VIERA, ANTONIO P. PARDO, and EDWARD M. REISS.

It is further ORDERED that ANIBAL J. DUARTE-VIERA, ANTONIO P. PARDO, and EDWARD M. REISS recover the following from Plaintiff:

(a) Attorneys' fees in the amount of $7,825.00 for representation at the trial court level; $7,500.00 for representation through appeal to the court of appeals should any appeal be filed; and $10,000.00 for representation at the petition for review stage in the Supreme Court of Texas, should any appeal be so presented;

(b) Pursuant to Rule 91a of the Texas Rules of Civil Procedure and as ordered by the Court on November 26, 2013, attorneys' fees in the amount of $1,500.00;

(c) Costs of court pursuant to Texas Rule of Civil Procedure 131 and 303 and section 31.007 (b) of the Texas Civil Practice and Remedies Code in the amount of $65.00 for filing fees and $1,026.59 for costs of the deposition of Plaintiff's designated witness; and

(d) Post-Judgment interest at the rate of 5% from the date of signing this judgment until paid.

FINAL JUDGMENT                                                                                          PAGE 2

This judgment is final, disposes of all parties and all claims, and is appealable.

Signed this _____ day of _____ **JAN 2 8 2015** _____ 2015.

_____

**JUDGE PRESIDING**

**AGREED AS TO FORM:**

DEANS & LYONS, LLP

_____

**Robert A. McNiel** TSB #24043814
rmcniel@deanslyons.com
**Kathleen Kilanowski** TSB #24053303
kkilanowski@deanslyons.com
325 N. Saint Paul St., Suite 1500
Dallas, Texas 75201-3891
Phone: (214) 965-8500
Fax: (214) 965-8505

**ATTORNEYS FOR DEFENDANTS**

770

# TAB B


2012CI12742_P00076

CAUSE NO. 2012-CI-12742

| | | |
|---|---|---|
| SW LOAN A, L.P., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ANIBAL J. DUARTE-VIERA, | § | BEXAR COUNTY, TEXAS |
| ANTONIO P. PARDO and | § | |
| EDWARD M. REISS, | § | |
| | § | |
| Defendants. | § | 166TH JUDICIAL DISTRICT |

697

DOCUMENT SCANNED AS FILED

28

# CHARGE OF THE COURT

**MEMBERS OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that

JURY INSTRUCTIONS, DEFINITIONS, AND
SPECIAL ISSUES                    2

DOCUMENT SCANNED AS FILED

was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence.

The term preponderance of the evidence means the greater weight of credible evidence presented in the case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the

DOCUMENT SCANNED AS FILED

average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report to me immediately.

In this charge, S W Loan A, LP shall be referred to as "SW Loan".

In this charge, Anibal J. Duarte -Viera shall be referred to as "Duarte – Viera."

In this charge, Antonio P. Pardo shall be referred to as "Pardo."

In this charge, Edward M. Reiss shall be referred to as "Reiss."

In this charge, Duare-Viera, Pardo and Reiss shall be cumulatively referred to herein as "Guarantors."

In this charge, 1946 Property, LLC shall be the original borrower of the Promissory Note.

In this charge, the Limited Guaranty Agreements dated April 17, 2008, shall be referred to herein as the "Limited Guaranty Agreement(s)."

DOCUMENT SCANNED AS FILED

## QUESTION NO. 1

Is SW Loan the holder/owner of the Limited Guaranty Agreements executed by Anibal J. Duarte-Viera, Tony P. Pardo and Edward M. Riess?

Answer "Yes" or "No"

_____Yes_____

If you answer "NO" to Question No. 1, DO NOT answer Questions Nos. 2 through 15, However, proceed to answer Question No. 16.

DOCUMENT SCANNED AS FILED

## QUESTION NO. 2

If you answered "Yes" in Question No. 1, then answer the following question. Otherwise, do not answer this question.

Did 1946 Property, LLC, fail to comply with the Promissory Note?[1]

Answer "Yes" or "No":

_____No_____

---
[1] TPJC 101.2

DOCUMENT SCANNED AS FILED

## QUESTION NO. 3

If you answered "Yes" in Question Nos. 1 and 2, then answer the following question. Otherwise, do not answer this question.

**Did Anibal J. Duarte-Viera sign the Limited Guaranty Agreement?**

Answer "Yes" or "No"

_____

703

DOCUMENT SCANNED AS FILED

## QUESTION NO. 4

If you answered "Yes" in Question No. 1, 2 and 3, then answer the following question. Otherwise, do not answer this question.

**Did Anibal J. Duarte-Viera fail to comply with the terms of the Limited Guaranty Agreement[2]?**

Failure to comply is excused by SW Loan's previous failure to comply with a material obligation of the Limited Guaranty Agreement.

Answer "Yes" or "No": _____

_____

[2] TPJC 101.2

DOCUMENT SCANNED AS FILED

## QUESTION NO. 5

If you answered "Yes" to Question No. 4, then answer the following question. Otherwise, do not answer this question.

**Did SW Loan suffer damages, if any, as a direct result of the alleged breach of Limited Guaranty Agreement by Anibal J. Duarte-Viera?**

No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.[3] Oklahoma law prohibits recovery of damages that are uncertain and speculative.[4]

Answer "Yes" or "No": 

_____

---

[3] Okla. Stat. Ann. tit. 23, §21
[4] See Great Western Motor Lines, Inc. v. Cozard, 417 P.2d 575, 578 (Okla. 1966)

JURY INSTRUCTIONS, DEFINITIONS, AND
SPECIAL ISSUES        9

705

DOCUMENT SCANNED AS FILED

## QUESTION NO. 6

If you answered "Yes" to Question No. 5, then answer the following question. Otherwise, do not answer this question.

What sum of money, if any, if paid in cash now, would fairly and reasonably compensate SW Loan for its damages, if any, that resulted from Anibal J. Duarte-Viera's breach of the Limited Guaranty Agreement[5]?

Consider the following elements of damages, if any, and none other.

Other than the interest due on the loan, do not add any other interest.

Answer separately in dollars and cents for damages, if any.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.[6]

Principal: _____

Interest: _____

Other incurred expenses, excluding attorneys' fees/costs: _____

---

[5] TPJC 115.3

[6] TPJC 100.11

DOCUMENT SCANNED AS FILED

## QUESTION NO. 7

If you answered "Yes" in Question No. 1 and 2, then answer the following question. Otherwise, do not answer this question.

**Did Antonio P. Pardo sign the Limited Guaranty Agreement?**

Answer "Yes" or "No"

_____

DOCUMENT SCANNED AS FILED

## QUESTION NO. 8

If you answered "Yes" in Question Nos. 1, 2 and 7, then answer the following question. Otherwise, do not answer this question.

Did Antonio P. Pardo fail to comply with the terms of the Limited Guaranty Agreement[7]?

Failure to comply is excused by SW. Loan's previous failure to comply with a material obligation of the Limited Guaranty Agreement.

Answer "Yes" or "No":

_____

[7] TPJC 101.2

DOCUMENT SCANNED AS FILED

## QUESTION NO. 9

If you answered "Yes" to Question No. 8, then answer the following question. Otherwise, do not answer this question.

**Did SW Loan suffer damages, if any, as a direct result of the alleged breach of Limited Guaranty Agreement by Antonio P. Pardo?**

No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.[8] Oklahoma law prohibits recovery of damages that are uncertain and speculative.[9]

Answer "Yes" or "No":

_____

[8] Okla. Stat. Ann. tit. 23, §21
[9] See Great Western Motor Lines, Inc. v. Cozard, 417 P.2d 575, 578 (Okla. 1966)

709

DOCUMENT SCANNED AS FILED

## QUESTION NO. 10

If you answered "Yes" to Question No. 9, then answer the following question. Otherwise, do not answer this question.


What sum of money, if any, if paid in cash now, would fairly and reasonably compensate SW Loan for its damages, if any, that resulted from Antonio P. Pardo's breach of the Limited Guaranty Agreement[10]?

Consider the following elements of damages, if any, and none other.

Other than the interest due on the loan, do not add any other interest.

Answer separately in dollars and cents for damages, if any.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.[11]


Principal: _____

Interest: _____

Other incurred expenses, excluding attorney's fees/costs: _____

---

[10] TPJC 115.3

[11] TPJC 100.11

JURY INSTRUCTIONS, DEFINITIONS, AND
SPECIAL ISSUES                    14

710

DOCUMENT SCANNED AS FILED

## QUESTION NO: 11

If you answered "Yes" in Question Nos. 1 and 2, then answer the following question. Otherwise, do not answer this question.

**Did Edward M. Reiss sign the Limited Guaranty Agreement?**

Answer "Yes" or "No"

_____

DOCUMENT SCANNED AS FILED

## QUESTION NO. 12

If you answered "Yes" in Question Nos. 1, 2 and 11, then answer the following question. Otherwise, do not answer this question.

**Did Edward M. Reiss fail to comply with the terms of the Limited Guaranty Agreement[12]?**

Failure to comply is excused by SW Loan's previous failure to comply with a material obligation of the Limited Guaranty Agreement.

Answer "Yes" or "No":

_____

---

[12] TPJC 101.2

712

DOCUMENT SCANNED AS FILED

# QUESTION NO. 13

If you answered "Yes" to Question No. 12, then answer the following question. Otherwise, do not answer this question.

Did SW Loan suffer damages, if any, as a direct result of the alleged breach of Limited Guaranty Agreement by Edward M. Reiss?

No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.[13] Oklahoma law prohibits recovery of damages that are uncertain and speculative.[14]

Answer "Yes" or "No":

_____

[13] Okla. Stat. Ann. tit. 23, §21
[14] See Great Western Motor Lines, Inc. v. Cozard, 417 P.2d 575, 578 (Okla. 1966)

713

DOCUMENT SCANNED AS FILED

## QUESTION NO. 14

If you answered "Yes" to Question No. 13, then answer the following question. Otherwise, do not answer this question.

What sum of money, if any, if paid in cash now, would fairly and reasonably compensate SW Loan for its damages, if any, that resulted from Edward M. Reiss's breach of the Limited Guaranty Agreement[15]?

Consider the following elements of damages, if any, and none other.

Other than the interest due on the loan, do not add any other interest.

Answer separately in dollars and cents for damages, if any.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.[16]

Principal: _____

Interest: _____

Other incurred expenses, excluding attorney's fees/costs: _____

---

[15] TPJC 115.3

[16] TPJC 100.11

JURY INSTRUCTIONS, DEFINITIONS, AND
SPECIAL ISSUES                                    18

714

## QUESTION NO. 15          a

If you have answered "Yes" to any of the blanks Question 5, 9, and 13 and if you have inserted a sum of money in response to Question No.'s 6, 10 and 14 then answer the following question.  Otherwise, do not answer the following question.

What is a reasonable fee for the necessary services of SW Loan A's attorney, stated in dollars and cents? [17]

Factors to consider in determining a reasonable fee include –

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.

2. The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.

3. The fee customarily charged in the locality for similar legal services.

4. The amount involved and the results obtained.

5. The time limitations imposed by the client or by the circumstances.

6. The nature and length of the professional relationship with the client.

7. The experience, reputation, and ability of the lawyer or lawyers performing the services.

8. Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

---

[17] TPJC 115.47

715

DOCUMENT SCANNED AS FILED

a. For representation in the trial court.

Answer:_____

b. For representation through appeal to the court of appeals.

Answer:_____

c. For representation at the petition for review stage in the Supreme Court of Texas.

Answer:_____

d. For representation at the merits briefing stage in the Supreme Court of Texas.

Answer:_____

e. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer:_____

DOCUMENT SCANNED AS FILED

## QUESTION NO. 16

**What is a reasonable fee for the necessary services of Guarantors' attorney, stated in dollars and cents?** [18]

Factors to consider in determining a reasonable fee include –

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.

2. The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer.

3. The fee customarily charged in the locality for similar legal services.

4. The amount involved and the results obtained.

5. The time limitations imposed by the client or by the circumstances.

6. The nature and length of the professional relationship with the client.

7. The experience, reputation, and ability of the lawyer or lawyers performing the services.

8. Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer with an amount for each of the following:

    a. For representation in the trial court.

Answer: $7825.00

    b. For representation through appeal to the court of appeals.

Answer: $7500.00

---

[18] TPJC 115.47

---

JURY INSTRUCTIONS, DEFINITIONS, AND
SPECIAL ISSUES            21

717

DOCUMENT SCANNED AS FILED

c. For representation at the petition for review stage in the Supreme Court of Texas.

Answer: $ 10,000

d. For representation at the merits briefing stage in the Supreme Court of Texas.

Answer:_____

e. For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer:_____

DOCUMENT SCANNED AS FILED

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror –

1.     to preside during your deliberations,

2.     to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3.     to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4.     to vote on the questions,

5.     to write your answers to the questions in the spaces provided, and

6.     to certify your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into Court with your verdict.

**JUDGE PRESIDING**

JURY INSTRUCTIONS, DEFINITIONS, AND
SPECIAL ISSUES             23

DOCUMENT SCANNED AS FILED

## Certificate

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into Court as our verdict.

(to be signed by the presiding juror if unanimous.)

_____
PRESIDING JUROR

(to be signed by those rendering the verdict if not unanimous.)

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

720

DOCUMENT SCANNED AS FILED

## Instructions for Signing the Verdict Certificate

1.  You may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2.  If ten jurors agree on every answer, those ten jurors sign the verdict. If eleven jurors agree on every answer, those eleven jurors sign the verdict. If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.  All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____

JUDGE PRESIDING

721

DOCUMENT SCANNED AS FILED

# Verdict Certificate

**Check one:**

_____✓_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____        _Jason X. Herrera_____
Signature of Presiding Juror                Printed Name of Presiding Juror


_____Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.


_____Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

722

DOCUMENT SCANNED AS FILED

Signature                                    Name Printed

1._____        _____

2._____        _____

3._____        _____

4._____        _____

5._____        _____

6._____        _____

7._____        _____

8._____        _____

9._____        _____

10._____        _____

11._____        _____

723

DOCUMENT SCANNED AS FILED

## Additional Certificate

I certify that the jury was unanimous in answer the following questions. All twelve of us agreed to each of the answers. The presiding juror has signed the certificate for all twelve of us.

_____
Signature of Presiding Juror

Jason X. Herrera
_____
Printed Name of Presiding Juror



DOCUMENT SCANNED AS FILED